## Payne, Agent, etc. v. Cooper.

(Decided December 15, 1922.)

## Appeal from McCreary Circuit Court.

1. Master and Servant—Personal Injuries—Pleading.—In an action by a section hand on a railroad for damages for an injury inflicted by the negligent handling or wielding by a foreman of an appliance, or because the foreman failed to give him warning of his intention to strike with a pick at a point very near to plaintiff, it is not necessary to allege that plaintiff was not aware of the danger, for he could not have known in advance of such danger.

2. Master and Servant—Peremptory Instructions.—There being evidence from which the jury might have believed the injury resulted either from the failure to give the warning or from negligent handling of the pick, a peremptory instruction was properly refused.

3. Damages—Excessive Damages.—Where the collar bone of a young man twenty-eight or twenty-nine years of age was broken and the flesh and muscles of his shoulder lacerated and bruised so that he was for several weeks unable to do any work, and was thereafter for a number of weeks unable to do any which required the use of his left arm, and his left shoulder as a result of the injury was from one-half to three-quarters of an inch lower than the other, a verdict for one thousand dollars in damages was not excessive.

TYE & SILER and EDWARD COLSTON for appellant.

L. G. CAMPBELL and H. C. GILLIS for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

During the period of government control of railroads in 1918 appellee was a member of a section crew located at Silverville, McCreary county, of which crew Ed Ball was the foreman. There was another section crew located at Pine Knot on the C., N. O. & T. P. Railway in the same county, of which Gram Ramsey was the foreman.

It became necessary during that year to put new and larger rails on the "Y" which was maintained at Pine Knot, and the nature of the work was such that it required two section crews to properly do it. The Siverville crew, to which appellee belonged, was taken to Pine Knot to aid the crew of which Ramsey was foreman in laying and placing new rails on the "Y."

While engaged in this work appellee was struck in the left shoulder with the pointed end of a pick being handled by Gran Ramsey, the foreman of the Pine Knot crew. The pick entered the left shoulder, fractured the collar bone and tore and bruised the flesh and muscles.

This is an action for damages because of such injury, and the allegations of negligence are in substance that Ramsey negligently handled and wielded the pick, and that Ramsey in handling and wielding the pick gave the plaintiff no warning of his purpose or intention to strike near to the plaintiff, the plaintiff at the time being at work in a place where he was ordered by the said foreman to be and to work, and at a place well known to Ramsey.

On the trial a verdict was returned for one thousand dollars in damages for the plaintiff, upon which judgment was entered, and the defendant's motion for a new trial having been overruled, it has appealed.

It is complained that no cause of action is stated in the petition because there is no allegation that plaintiff was not aware of the danger; but this is not an action to recover damages for injuries received by an employe because he is required to labor at an unsafe place or with defective appliances. In such an action the plaintiff must, to complete his cause of action, allege in substance that he was not aware of the unsafe place or of the defective appliances. Here, however, there is no claim either that the place was unsafe or that the appliances used by appellee or any of the workmen were defective in any respect. On the contrary, the negligence complained of is the faulty and negligent handling or wielding of the pick by the foreman, and the negligent failure of the foreman to warn appellee that he was about to strike with a pick at a point so near to appellee as entitled him to such warning. There is a clear distinction between an action for damages because the place of work is unsafe or because the appliances used are unsafe or insufficient, and one where although the place of work be safe and although the appliances in use are not defective, still the negligent use and handling of the several appliances, or the failure of one in authority to give warning of such use of it as might result in injury to an employe.

From the very nature of such a case the employe could not have known of the danger in advance, for the danger was instantaneously created by the negligent wielding or use of the pick, or by the failure of the mas-

ter to give the warning which under the circumstances, was incumbent upon him.

The two crews were at work in placing a heavy rail on a curve in the "Y;" the rail had been attached to an adjoining rail at one end and they were engaged in bending or curving the rail toward the gauge, or the point at which it was desired to go.

Appellee and several others each had heavy lining bars and were placed very close together, almost touching each other, and were prizing against the rail from the outside attempting to curve it toward the gauge; Ramsey, the foreman, was just in front of them between the outer rail upon which they were working and the inner rail, and had a pick which was sharp at one end and was using that pick by sticking the same in the ties at a time when the workmen had bent the rail forward so as to hold the rail in that position until the men using the lining bars could get a new hold with their appliances so as to further bend the rail toward the gauge, and Ramsey in making a stroke with the pointed end of his pick so as to bury the same in a tie very near to appellee struck the latter in the left shoulder with the pointed end of the pick. From the nature of the work and the great force and power necessary to bend this heavy rail it was essential that the men using the lining bars should be placed very close together, as they were. It was likewise necessary for the man wielding the pick to be very close and near to the men using the lining bars, and it would seem that under these circumstances it would be the duty of the foreman handling the pick when it became necessary for him to make a stroke with it very near to any of the workmen right in front of him to give warning of such intended stroke.

The evidence of the plaintiff is that the foreman gave no warning, that plaintiff did not see the beginning of the stroke but saw the pick rapidly descending only when it was two or three feet above him, and then only had time to turn his head some three or four inches aside so as to receive the stroke in the shoulder instead of in the head; that even if he had had time he could not wholly have dodged the pick after he saw it because the men using lining bars with him were so close to him on each side that he could only have moved a very short distance either way.

There was evidence for the defendant to the effect that about the time the stroke was made appellee changed his

lining bar from his left shoulder to his right shoulder without notice to the foreman, and that but for this action the injury would not have occurred. But this was wholly denied by the plaintiff who said that he did not have the lining bar on either shoulder at the time but was lifting on it with his hands and leaning toward the rail and toward the foreman. This was an issue of fact which was properly submitted to the jury and they evidently took the plaintiff's view of it.

The claim that there should have been a peremptory instruction on the facts manifestly can not be upheld. Under the evidence the jury was justified in believing either that the injury resulted from the failure to give warning or from negligent handling of the pick.

The claim that the verdict was excessive is clearly without merit. Appellee was then a young man twenty-eight or twenty-nine, and in good health; his collar bone was broken and the flesh and muscles of his shoulder were lacerated and bruised; he suffered greatly for several weeks and was unable for that length of time to do any work and was all that time under the care of his physician. He was thereafter for a number of weeks unable to do any work which required the use of his left arm, and at the time of the trial, some time after the injury, his left shoulder was from one-half to three-fourths of an inch lower than the right shoulder, and even then he could not use his left arm to full advantage.

We see no merit in any of the claims urged for reversal, and the judgment is affirmed.